IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

MILAN PUSKAR HEALTH RIGHT,
LAWSON KOEPPEL, ALINA LEMIRE,
and CARRIE WARE,

        Plaintiffs,

v.                                                                                   Civil Action Number: 3:21-cv-00370
                                                                                     Honorable Robert C. Chambers

BILL J. CROUCH, in his official capacity as
Cabinet Secretary of the West Virginia
Department of Health and Human Resources,
JOLYNN MARRA, in her official capacity as
Interim Inspector General and Director of the
Office of Health Facility Licensure and Certification,
STEVE HARRISON, in his official capacity as
Clerk of the House of Delegates and Keeper of the Rolls,
and RICH OLSEN, in his official capacity as Director
of the Division of Legislative Services,

        Defendants.

## DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

In their motion to dismiss and supporting memorandum, Defendants demonstrated that all of Plaintiffs' claims – which seek to invalidate West Virginia's new syringe services program statute – fail as a matter of law.  Indeed, this Court already recognized as much in its Memorandum Opinion and Order (ECF No. 31) denying Plaintiffs' request for a preliminary injunction. Although Plaintiffs argue that the Court's rulings at the preliminary injunction stage are not binding at the motion to dismiss stage, Plaintiffs offer no valid reason why this Court should depart from its prior rulings.  Instead, Plaintiffs mostly repeat the same arguments the Court has already rejected.   And because this case presents purely legal questions (the interpretation and

constitutionality of a new statute), there are no factual issues to consider nor any reason to delay final adjudication. Accordingly, for the reasons set forth below and in Defendants' memorandum in support of their motion to dismiss (ECF No. 33), this Court should dismiss Plaintiffs' amended complaint.

## ARGUMENT

I. **Count I fails because Senate Bill 334 is not unconstitutionally vague.**

    A. **This Court correctly concluded that Senate Bill 334 is subject to a less strict vagueness test.**

In its July 15, 2021, Order, this Court correctly recognized that where, as here, a statute regulates economic activity, a "less strict vagueness test" applies. *See* Memo. Op. & Order (ECF No. 31), 5. Although Plaintiffs strain to convince this Court that S.B. 334 is "quasi-criminal" due to its purported "significant civil and administrative penalties," Plaintiffs' arguments are irrelevant: under Fourth Circuit law, even a criminal statute that regulates economic activity is subject to a "less strict vagueness test." *See U.S. v. Hsu*, 364 F.3d 192, 196 (4th Cir. 2004) (*citing U.S. v. Sun*, 278 F.3d 302, 309 (4th Cir. 2002)).[1]

And even if this were not so, Plaintiffs' arguments would fail. As this Court observed, a scienter requirement may mitigate a law's vagueness, and here, OHFLAC's emergency rule reserves the harshest penalties for intentional misrepresentations and fraud. *See* Memo. Op. & Order (ECF No. 31), 6; *see also* W. Va. C.S.R. § 69-17-14. In arguing to the contrary, Plaintiffs

---

[1] Plaintiffs argue that § 4.3 of OHFLAC's emergency rule implicates the constitutional right to be free from unreasonable searches and seizures. But § 4.3 merely provides that if a syringe services program denies OHFLAC access to program records, then a court *may*, upon a proper showing of probable cause, issue a warrant for the purpose of conducting inspections and seizures of property appropriate to the inspections. *See* W. Va. C.S.R. § 69-17-4.3. Providing courts with the option to issue a warrant upon a proper showing of probable cause does not implicate the right to be free from unreasonable searches and seizures. And this ancillary provision in OHFLAC's emergency rule does not convert S.B. 334, which is plainly directed at economic activity, into a statute that inhibits constitutionally protected rights.

2

assert that § 14.4 of the emergency rule, which requires the Director of OHFLAC to report violations by a licensed professional to the applicable professional licensing board, could put a professional's livelihood in jeopardy.  This is speculative at best, as merely reporting a violation of OHFLAC's emergency rule to a medical professional's licensing board does not guarantee that the board will revoke the professional's license.  Plaintiffs also argue that S.B. 334 provides OHFLAC with the power to seek an injunction, and that the effect of a violating the injunction would be criminal in nature.  But the fact that one who violates an injunction may be subject to quasi-criminal proceedings does not render every injunction itself a criminal penalty.

Regardless, for the reasons discussed herein and in Defendants' memorandum in support of their motion to dismiss, S.B. 334 § is not unconstitutionally vague under any level of scrutiny.

## B.    There are no questions of fact as to the redesignation of Senate Bill 334 from Article 63 to Article 64.

Plaintiffs have alleged that S.B. 334 is unconstitutionally vague because both it and House Bill 2500 – an unrelated bill governing a different subject matter – contain sections with the same preliminary code designations (W. Va. Code §§ 16-63-1 through 16-63-3).  But as the Court recognized, this duplication does not violate Plaintiffs' due process rights because it will be quickly resolved (to the extent it has not been already) by the House Clerk's redesignation of as W. Va. Code § 16-64-1 *et seq*.  *See* Memo. Op. & Order (ECF No. 31), 7.[2]  As Defendants previously demonstrated through the Affidavit of Steve Harrison (ECF No. 14-1) and the public records attached thereto, it is commonplace for (a) the Legislature to use overlapping designations during

---

[2] Plaintiffs do not dispute that S.B. 334 already appears as W. Va. Code § 16-64-1 *et seq*. on the West Virginia Legislature's website and on legal research platforms like Westlaw and LexisNexis.  And while Plaintiffs argue that the "official publishing of the code" will not occur the fall of this year, S.B. 334 will appear as W. Va. Code § 16-64-1 *et seq*. in the "official code" as well unless Plaintiffs succeed in their effort to interfere.

the legislative process (because the Legislature does not know which bills will become law), and (b) the House Clerk to renumber any remaining duplicate designations after the gubernatorial veto process is complete.

Plaintiffs seize on the word "commonplace" and argue that whether these practices are truly commonplace is a question of fact. But this argument fails for at least two reasons. First, this Court can take judicial notice of the public records attached to Mr. Harrison's Affidavit, which show numerous instances throughout the past two decades when the Legislature used overlapping placeholder designations and the House Clerk renumbered them.[3] Second, and more importantly, the extent to which the House Clerk's redesignation of preliminary code designations is "commonplace" ultimately does not matter. What matters is that the purported confusion caused by the overlapping preliminary code designations has been, or soon will be, resolved by (a) the current publication of S.B. 334 as W. Va. Code § 16-64-1 *et seq.* online, and (b) the subsequent publication of S.B. 334 as W. Va. Code § 16-64-1 *et seq.* in the official printed code this fall. Thus, there neither is nor will be any duplication of code designations in any published version of the West Virginia Code.

Plaintiffs also attempt to create confusion by citing a 1937 case for the notion that when there is a variance between a printed act and the enrolled bill, the enrolled bill controls. But the principle they cite just means that if there is some conflict between the text of what the Legislature passed and what the code publishers published, the enrolled bill is the best evidence of the Legislature's intent. Here, the text is unchanged; only the meaningless, preliminary article number

---

[3] Plaintiffs argue that although Defendant Harrison attests that redesignation is a longstanding practice, he does not provide information on how frequently this happens after the governor has signed a bill into law and prior to final publication of the statute. But Mr. Harrison's affidavit is clear that *every* redesignation happens after the governor signs the bill and prior to final publication. His affidavit explains that the redesignations occur "after the deadline for the Governor to approve or disapprove bills" and are then published under the redesignated numbers in the fall. Affidavit of Steve Harrison (ECF No. 14-1), ¶¶ 4, 9.

has changed.  And there is no issue as to Legislative intent.  Indeed, it would strain credulity to argue that the Legislature, when using overlapping article designations during the legislative process, did not intend for one of the articles to be renumbered.

      **C.**    **Section 16-64-10(d) is not unconstitutionally vague.**

Plaintiffs argue that § 16-64-10(d) is impermissibly vague because it requires providers to offer "the full array of harm reduction services as set forth in this section," but "this section" does not define "full array of harm reduction services."  The Court has already rejected this argument both at the July 8, 2021, hearing and in the Court's subsequent written Order.  *See* Hr'g Tr. 107-108[4]; Memo. Op. & Order (ECF No. 31), 9.  As the Court properly recognized, the Court must read § 16-64-10(d) within the context of the entire statute.  And because other sections of the statute both define "harm reduction program" (W. Va. Code § 16-64-1) and specify 10 services that such programs must offer (W. Va. Code § 16-64-3(a)), the statute is sufficiently clear.  Memo. Op. & Order (ECF No. 31), 9.  Further, § 10(d)'s inclusion of the words "in this section" does not negate the fact that the statute as a whole explicitly defines the "harm reduction services" that providers must offer.  Hr'g Tr. 107-108.

In addition, OHFLAC's emergency rule removes any doubt by specifically defining the phrase "full array of harm reduction services" as used in W. Va. Code §16-64-10(d).  *See* W. Va. C.S.R. § 69-17-2.6.   Although Plaintiffs argue that the emergency rule contradicts the "in this section" language of the statute, OHFLAC's definition comports with the Court's reading of the statute as a whole and is a reasonable interpretation of Legislative intent.  And in any event, the emergency rule is just icing on the cake, because the Court has already determined that the statute is sufficiently clear on its own.  Memo. Op. & Order (ECF No. 31), 9.

---

[4] Relevant portions of the transcript of the July 8, 2021, hearing are attached hereto as Exhibit A.

Finally, Plaintiffs' response makes no attempt to address Defendants' arguments that (1) Plaintiffs cannot maintain a facial challenge to a statute that does not implicate the First Amendment; (2) Plaintiffs cannot prevail on an as-applied challenge because they have received fair notice of what the statute proscribes; and (3) any vagueness in §16-64-10(d) would not warrant nullification of the entire statute. *See* Defendants' Memo. of Law (ECF No. 33), 8-10. For all these reasons, Count I must be dismissed.

## II. Count II fails because OHFLAC has resolved the purported conflict between § 10(b) and § 10(d), because procedural due process does not apply to legislative acts, and because there are no fundamental property interests at issue.

As this Court has recognized, Defendants have provided a viable interpretation that eliminates the purported conflict between § 10(b) and § 10(d): OHFLAC's emergency rule clarifies that syringe service programs not offering the full array of harm reduction services can stay open for the purpose of referring current participants to other syringe services programs. *See* Memo. Op. & Order (ECF No. 31), 10-11; *see also* W. Va. C.S.R. § 69-17-3.2.1.b. Plaintiffs' arguments to the contrary conflict lack merit.

First, Plaintiffs argue that OHFLAC's rule is no help to providers who were "forced" to cease and desist upon passage of the statute in April without notice and opportunity for hearing. But no one was "forced" to cease and desist prior to the July 9, 2021, effective date of the statute. And in any event, procedural due process (i.e. notice and opportunity to be heard) does not apply to legislative acts. *See Richardson v. Town of Eastover*, 922 F.2d 1152, 1158 (4th Cir. 1991) (recognizing that there is no right to notice and an opportunity to be heard with respect to legislation); *Clayland Farm Enterprises, LLC v. Talbot Cty., Maryland*, No. CV GLR-14-3412, 2019 WL 4116631, at *12 (D. Md. Aug. 29, 2019) ("Legislative acts do not give rise to procedural due process rights."); *Applegate, LP v. City of Frederick, Maryland*, 179 F. Supp. 3d 522, 528 (D.

Md. 2016) ("[C]ourts have consistently recognized that official action that is legislative in nature is not subject to the notice-and-hearing requirements of due process.").

Second, Plaintiffs argue that OHFLAC's rule conflicts with the language of § 10(d). It does not. Section 10(d) says that providers not offering the full array of harm reduction services must cease and desist offering *needle exchange services*; it does not say that the providers cannot stay open for the purposes of referring participants to other programs. *See* W. Va. Code § 16-64-10(d). And in any event, a provider who follows the enforcement agency's interpretation of the statute is at no risk of being penalized by the enforcement agency.

As to the "fundamental property interest" aspect of Count II, Plaintiffs admitted at the July 8, 2021, hearing that this case does not involve any fundamental rights. Plaintiffs now protest that this admission was made in the context of the standard of scrutiny applicable to Plaintiffs' equal protection claim – as if a right or property interest can be "fundamental" for some purposes but not others. No matter, because the law is clear that Plaintiffs have no "fundamental property interest" in continuing to provide syringe distribution services. *See AJE Enter. LLC v. Just.*, No. 1:20-CV-229, 2020 WL 6940381, at *5-*8 (N.D.W. Va. Oct. 27, 2020) (holding, based on numerous listed authorities, that the "right to do business" has not been recognized as a constitutionally protected right, and that the activity of doing business is not "property"). Accordingly, Count II must be dismissed.

## III.   Count III fails because Plaintiffs are not entitled to the relief they seek for the alleged discrimination against existing providers.

In its July 15, 2021, Order, this Court held that Plaintiffs are not entitled to the relief they seek (invalidation of the entire statute) for their equal protection claim. *See* Memo. Op. & Order (ECF No. 31), 15, n. 7. Plaintiffs now argue that Defendants (and by necessary implication, the Court) have misconstrued Plaintiffs' request for relief, and that "in order to remedy the

discrimination against existing providers, the existing providers must be entitled to the same time granted for compliance to new providers: until January 1, 2022." Pls.' Response (ECF No. 36), 9. Plaintiffs are wrong. As this Court explained, "the Legislature's intention was to preclude *any* provider from operating a needle exchange service without the full array of service before January 1, 2022," so the appropriate remedy would be "to enjoin the Defendants from the unconstitutional application by requiring that [they] enforce the cease and desist order against *all* providers not offering the full array of harm reduction services." Memo. Op. & Order (ECF No. 31), 15, n. 7; *see also Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330 (2006) ("[T]he touchstone for any decision about remedy is legislative intent, for a court cannot 'use its remedial powers to circumvent the intent of the legislature.'").

Further, as Defendants have argued, Plaintiffs are not even entitled to this limited injunctive relief, because (a) Plaintiffs have not suffered, and are not likely to suffer, any actual or imminent discrimination; and (b) Defendants have provided a viable alternative interpretation consistent with the Legislature's intent to preclude *any* provider from operating a needle exchange service without offering the full array of services before January 1, 2022. *See* Defendants' Memo. of Law (ECF No. 33), 12-14. Thus, Count III must be dismissed.

## IV. Counts IV through VI fail because there is no applicable exception to Defendants' sovereign immunity from state law claims in federal court.

State officials, like Defendants, are generally immune from suit in federal court, and there is no exception for suits seeking injunctive *or declaratory* relief for violations of state law. *See Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 107 (4th Cir. 2011). Plaintiffs argue that two of their three state law claims[5] do not require the Court to make any determination as to

---

[5] This is a tacit admission that Plaintiffs' third state law claim – which asks the court to strike down and enjoin the House Clerk's redesignation of S.B. 334 – *is* barred by sovereign immunity.

whether Defendants acted in violation the West Virginia Constitution, and instead merely require the Court to declare that S.B. 334 violates the West Virginia Constitution. But there is no exception to sovereign immunity for the declaratory relief Plaintiffs suggest. Indeed, various courts have recognized that sovereign immunity bars claims seeking a declaration that state laws violate the state's constitution.[6]

Further, the Court should reject Plaintiffs' invitation to certify questions to the West Virginia Supreme Court of Appeals. Eleventh Amendment sovereign immunity is a jurisdictional limitation on the power of federal courts. *Westinghouse Elec. Corp. v. W. Virginia Dep't of Highways*, 845 F.2d 468, 469 (4th Cir. 1988). Thus, the only action this Court can take with respect to Plaintiffs' state law claims is dismissal.

## V. Even if there were an applicable exception to sovereign immunity, Counts IV though VI fail under West Virginia law.

### A. Senate Bill 334 does not violate the West Virginia Constitution's "pointer" requirement.

All the title of a bill must do to satisfy the West Virginia Constitution's "pointer" requirement is impart "enough information to one interested in the subject matter to provoke a reading of the act." *See McCoy v. VanKirk*, 500 S.E.2d 534, 546 (W. Va. 1997). Indeed, "[i]f the title of an act states its general theme or purpose and the substance is germane to the object

---

[6] *See e.g.*, *Porter v. Gore*, 354 F. Supp. 3d 1162, 1180 (S.D. Cal. 2018) (holding that a claim seeking to invalidate a California statute based on the California constitution was barred by sovereign immunity); *New Jersey Educ. Ass'n v. New Jersey*, No. CIV. 11-5024, 2011 WL 6176226, at *3 (D.N.J. Dec. 12, 2011) (holding that claims seeking declaration that statutory amendments violated the New Jersey constitution were barred by the 11th Amendment, and recognizing that "there may be no greater threat to [a state's] sovereign authority than a federal court mandating that a state legislature abide by a federally-imposed interpretation of the very document from which that legislature derives its existence and authority."); *Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005) (holding that claims seeking to invalidate a ballot initiative as violative of the Montana constitution were barred by the 11th Amendment); *McFarland v. Folsom*, 854 F. Supp. 862, 873 (M.D. Ala. 1994) ("[W]hether state statutes are in conflict with one another, or violate the state constitution, are questions for state courts, not federal courts, to decide.").

expressed in the title, the title will be held sufficient." *Id.* Here, § 16-64-2(b)(9), which requires a syringe services program license applicant to provide a statement of support from the local county commission and city council, is one of nine license application requirements. The title of S.B. 334 expressly states that the bill contains "license application requirements." Even if, as Plaintiffs suggest, § 16-64-2(b)(9) is the "most burdensome requirement for a provider to meet," it is still a licensure requirement. As such, anyone interested in applying for a license who reads the title of the bill would be provoked to read the bill and discover all nine license requirements. Nothing more is required. Count IV must be dismissed.

      **B.**      **Senate Bill 334 does not violate the West Virginia Constitution's "one object" requirement.**

Plaintiffs concede that their "one object" claim is dependent on their claim that S.B. 334 and H.B. 2500 are irreconcilable. As previously discussed, S.B. 334 is wholly separate from, and not irreconcilable with, H.B. 2500. Accordingly, Plaintiffs' "one object" claim fails, and Count V must be dismissed.

      **C.**      **The renumbering Senate Bill 334's preliminary designation does not violate the West Virginia Constitution nor cause any harm to Plaintiffs.**

As this Court recognized, "Plaintiffs have failed to identify any legal authority to support their claim that the House Clerk's redesignation of S.B 334 – without changing any of the bill's substantive text – violates the West Virginia Constitution. Memo. Op. & Order (ECF No. 31), 7, 15. Plaintiffs retort that Defendants offer no legal authority that the House Clerk's redesignation *does not* violate the West Virginia Constitution, but Plaintiffs are the ones asking this Court to strike down a longstanding legislative practice – a practice that is both necessary and important in light of Legislature's inability to know prior to the Governor's action which bills will become law.

As such, it is incumbent upon Plaintiffs to offer some compelling authority in support of their extraordinary request.[7]

Further, Plaintiffs' argument – that redesignation by the House Clerk violates separation of powers principles and would unconstitutionally vest in the House Clerk the power to amend the text of enrolled bills – is unpersuasive on its face. To begin, nobody is saying that the House Clerk has the authority to alter the *text* of bills after they have been signed by the Governor, nor is there any allegation in this case that the House Clerk altered the *text* of any bill. Rather, the Legislature entrusts the House Clerk (an employee of the Legislature) to perform the purely ministerial act of renumbering duplicative preliminary code designations when, after the Governor has finished signing bills into law, there ends up being more than one new section or article bearing the same number. The House Clerk does not change the substance of any bill.

Further, redesignation by the House Clerk does not invade the province of the executive branch. The Governor's role is to sign or veto a bill. It would be absurd to contend that the Governor's decision to sign or veto S.B. 334 (or any other bill) was based in any way on the meaningless article number assigned to the bill. Thus, redesignating overlapping article numbers after the Governor has signed the bills in no way usurps or disrespects the Governor's role in the legislative process.

---

[7] Plaintiffs cite a 1986 Attorney General advisory opinion which, according to Plaintiffs, concluded that the Secretary of State cannot alter the text of a constitutional amendment. Defendants are unable to identify or locate the purported Attorney General opinion to which Plaintiffs refer, but Plaintiffs' own description of this opinion indicates that it is inapposite. According to Plaintiffs, the opinion addressed the Secretary of State's *deletion of a sentence* from a proposed constitutional amendment after it had been approved by two-thirds of both houses of the Legislature. Obviously, the Secretary of State (an officer of the executive branch) deleting a sentence approved by the Legislature in a constitutional amendment is markedly different from the House Clerk (an employee of the Legislature) renumbering preliminary designations when multiple new articles are created in the same chapter.

Finally, as Defendants have argued (*see* Defendants' Memo. of Law (ECF No. 33), 16-17), Plaintiffs have no standing to challenge or enjoin redesignation because Plaintiffs have not suffered and will not suffer any injury as a result of redesignation.  And the only thing Plaintiffs could enjoin at this point is publication of S.B. 334 as Article 64 in the printed code; it already appears as Article 64 in the online code.  As such, an injunction interfering with publication in the printed code would only create confusion.   Plaintiffs have offered nothing to rebut these points.  Count VI must be dismissed.

## CONCLUSION

For the reasons set forth above and in Defendants' memorandum in support of their motion to dismiss (ECF No. 33), Defendants respectfully request that this Court dismiss Plaintiffs' amended complaint with prejudice.

Respectfully submitted,

BILL J. CROUCH, in his official capacity as Cabinet Secretary of the West Virginia Department of Health and Human Resources, JOLYNN MARRA, in her official capacity as Interim Inspector General and Director of the Office of Health Facility Licensure and Certification, STEVE HARRISON, in his official capacity as Clerk of the House of Delegates and Keeper of the Rolls, and RICH OLSEN, in his official capacity as Director of the Division of Legislative Services,

By Counsel,


  /s/ David R. Pogue
Michael W. Carey (WVSB No. 635)
David R. Pogue (WVSB No. 10806)
CAREY DOUGLAS KESSLER & RUBY, PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
drpogue@cdkrlaw.com
*Special Assistant Attorneys General*

13

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

MILAN PUSKAR HEALTH RIGHT,
LAWSON KOEPPEL, ALINA LEMIRE,
and CARRIE WARE,

       Plaintiffs,

v.                                       Civil Action Number: 3:21-cv-00370
                                       Honorable Robert C. Chambers

BILL J. CROUCH, in his official capacity as
Cabinet Secretary of the West Virginia
Department of Health and Human Resources,
JOLYNN MARRA, in her official capacity as
Interim Inspector General and Director of the
Office of Health Facility Licensure and Certification,
and STEVE HARRISON, in his official capacity as
Clerk of the House of Delegates and Keeper of the Rolls,

       Defendants.

## **CERTIFICATE OF SERVICE**

       The undersigned, counsel of record for Defendants, does hereby certify on this the 13th day

of August, 2021, that a true copy of the foregoing "Defendants' Reply to Plaintiffs' Response to

Defendants' Motion to Dismiss" was filed with the Clerk of Court using the CM/ECF system,

which will send notification of such filings to the following CM/ECF participants:

       Loree Stark (WVSB No. 12936)
       ACLU of West Virginia Foundation
       P.O. Box 3952
       Charleston, WV  25339-3952
       lstark@acluwv.org
       Counsel for Plaintiffs

                         _/s/ David R. Pogue_____
                         David R. Pogue (WVSB No. 10806)