IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MILAN PUSKAR HEALTH RIGHT,
LAWSON KOEPPEL,
ALINA LEMIRE, and
CARRIE WARE,

                Plaintiffs,

v.     CIVIL ACTION NO. 3:21-0370

BILL J. CROUCH, in his official capacity as
Cabinet Secretary of the West Virginia
Department of Health and Human Resources,
JOLYNN MARRA, in her official capacity as
Interim Inspector General and Director of the
Office of Health Facility Licensure and Certification, and
STEVE HARRISON, in his official capacity as Clerk
of the House of Delegates and Keeper of the Rolls,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Bill J. Crouch, Jolynn Marra, and Steve Harrison's (Defendants) Motion to Dismiss. ECF No. 32. Defendants argue that Plaintiffs are not entitled to the relief they seek, and thus, their Amended Complaint must be dismissed. For the following reasons, the Court **GRANTS** this Motion. ECF No. 32.

### BACKGROUND

West Virginia is experiencing an opioid-related epidemic and facing alarming outbreaks of Hepatitis C and HIV, all exacerbated by the spread of infections and other harm related to the use of syringes by drug abusers and others untrained in syringe hygiene. To combat these outbreaks, public health officials have implemented several strategies, including sterile syringe exchanges. These programs, which are also known as "needle exchanges," provide sterile syringes

to participants upon request, while promoting other public health services and preventing the spread of disease. As the amicus brief reports, these exchanges are considered harm reduction initiatives that have already demonstrated significant success across West Virginia and are recommended by many governmental and other health care entities.

Despite this success and contrary to the recommendations and objections from authorities in the field, the West Virginia Legislature decided to regulate these syringe services, perhaps to the point of elimination. On April 10, 2021, state lawmakers passed Senate Bill 334, the Syringe Services Program Act, which establishes an oversight scheme for syringe service programs in West Virginia. These measures create a new article of Chapter Sixteen of the West Virginia Code. W. VA. ANN. CODE §§ 16-63–10 *et seq.* (West 2021).[1] Among other things, the Bill requires syringe services programs to obtain a license from the Office of Health Facility Licensure and Certification ("OHFLAC"), to "distribute syringes with a goal of a 1:1 model," and to be part of a comprehensive harm reduction program which offers or refers participants to other services. § 16-64–3.

The Bill also authorizes OHFLAC to promulgate emergency rules to "effectuate the provisions of [Senate Bill 334] in accordance with evidence-based practices" by July 1, 2021. § 16-64–7. Defendants have proffered at least five drafts that were sent to interested parties, including Milan Puskar Health Right Director Laura Jones. These draft rules indicate that OHFLAC intended to file its final rule with the West Virginia Secretary of State on July 1, 2021, and for the final rule to go into effect on July 9, 2021— the same day that Senate Bill 334 was set to go into effect. *Attach. D to Marra Aff*. ECF No. 14-2. Marra testified that OHFLAC decided not

---

[1] For the sake of clarity, this Opinion adopts the article number designated by the Clerk of the West Virginia House of Delegates (W. Va. §§ 16-64–1 *et seq.*). Unless otherwise indicated, all citations to sections of the code refer to West's Annotated Code of West Virginia.

to file the rule in light of the Court's temporary restraining order (TRO). ECF No. 11.

On June 25, 2021, Plaintiffs Milan Puskar Health Right, Lawson Koeppel, Alina Lemire, and Carrie Ware filed the Verified Complaint for Declaratory and Emergency Injunctive Relief for Constitutional Violations (ECF No. 1) and a Motion for Emergency Injunctive Relief (ECF No. 4). Plaintiffs claim that the law violates their due process and equal protection rights, as well as the West Virginia Constitution. As sterile syringe service providers, Plaintiffs predict that the enforcement of Senate Bill 334 will result in fewer people accessing health services and fewer opportunities to prevent the spread of diseases including HIV, endocarditis, and Hepatitis C. Plaintiffs asked for a preliminary injunction (1) enjoining the State Defendants from enforcing Senate Bill 334; (2) enjoining the Clerk of the House of Delegates and Keeper of the Rolls from exercising any authority granted to him under House Rule 20 to amend Senate Bill 334; and (3) waiving the bond requirement for Plaintiffs.

On June 28, 2021, the Court issued a TRO granting Plaintiffs' requested relief, and on July 2, 2021, Defendants submitted their response in opposition. ECF No. 14. On July 7, 2021, the Court entered another order resolving several issues ahead of the preliminary injunction hearing. Specifically, the Court held that Plaintiffs were not likely to succeed on Count I of the Amended Complaint, but only to the extent that it is premised on Senate Bill 334 being irreconcilable with House Bill 2500. The Court also held that Plaintiffs were not likely to succeed on Count IV, which alleged violation of the expressive title requirement under the West Virginia Constitution.

The Court held a preliminary injunction hearing the next day. At the outset of the hearing, the Court reiterated its prior findings and held that Plaintiffs were also not likely to succeed on Count VI, which alleges another violation of the expressive title requirement and a violation of separation of powers under the West Virginia Constitution. The parties then presented evidence

and oral argument on the remaining claims. At the close of the hearing, the Court extended the TRO, but ultimately the TRO was dissolved, and the Court denied the Plaintiffs injunctive relief on July 15, 2021. ECF No. 31.

Defendants filed this Motion to Dismiss on July 23, 2021. ECF No. 32.

## STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting

*Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

## DISCUSSION

Defendants raise several arguments as to why Plaintiffs' Amended Complaint should be dismissed. They are as follows:

1. Count I fails because the Act is not unconstitutionally vague.

2. Count II fails because OHFLAC has resolved the purported conflict between § 10(b) and § 10(d).

3. Count III fails because even if § 16-64-10(d) can be read to discriminate between new and existing providers, that does not justify the relief Plaintiffs seek.

4. Counts IV through VI fail because sovereign immunity precludes state law claims against state officials in federal court.

5. Even if Defendants were not immune from Counts IV through VI, those claims have no merit under West Virginia law.

*See generally Def.'s Br.*, ECF No. 33. The Court will address each of these arguments.

1. Count I – Unconstitutional vagueness

Laws that regulate persons in the United States must give fair notice of the prohibited or required conduct. *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). The prohibition against vague laws "is rooted in the Due Process Clause of the Fifth and Fourteenth Amendments." *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 272 (4th Cir. 2019). A law is impermissibly vague if it fails to "give a person of ordinary intelligence adequate notice of what conduct is prohibited" or if it fails to "include sufficient standards to prevent arbitrary and discriminatory enforcement." *Id.* "The purpose of the fair notice requirement is to enable citizens to conform their conduct to the proscriptions of the law." *Id.* at 274 (citing *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999)).

Where, as here, the statute at issue is an economic regulation, "a less strict vagueness test" applies because plaintiffs like those here can be expected "to consult relevant legislation in advance of action or to seek clarification from appropriate administrative sources when necessary." *Greenville Women's Clinic v. Comm'r, S.C. Dep't of Health & Env't Control*, 317 F.3d 357, 367 (4th Cir. 2002) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates., Inc.*, 455 U.S. 489, 498–99 (1982)) (internal quotation marks omitted). Similarly, "[l]ess clarity is required in purely civil statutes because the 'consequences of imprecision are qualitatively less severe.'" *Manning*, 930 F.3d at 272 (quoting *Hoffman Estates.*, 455 U.S. at 499).

First, Plaintiffs' Amended Complaint alleges that the penalties in S.B. 334 are so "prohibitory and stigmatizing" that they should be deemed "quasi-criminal." *Am. Compl.*, ECF No. 21, ¶¶ 65–68. The Court has already considered this argument and decided that the penalties imposed by the S.B. 334, while substantial, are not so severe as to apply the same level of scrutiny afforded to criminal statutes. ECF No. 31, at 6. The Court discussed how the harshest penalties are for misrepresentation and fraud, both offenses which have a scienter requirement. *Id.* This scienter requirement mitigated any potential vagueness and relaxed the applicable level of scrutiny. *Id.* Thus, the Court finds that the relaxed level of scrutiny is applicable to this inquiry.

Next, Plaintiffs assert that first three provisions of S.B. 334 are void because they were given the same article and section numbers as different legislation that relates to the use, disposition, or sale of auxiliary containers. *Am. Compl.* ¶ 69–70. Defendants argue that it is commonplace for the West Virginia Legislature to use the same article number for multiple bills during a legislative season because the Legislature does not know which bills will actually become law. After the governor approves of legislation, the Office of the Clerk prepares a code conflict report and redesignates new articles based on the order in which the Legislature passed the bills. While Plaintiffs argue that the House Clerk has no authority to alter the text of an enrolled bill, no matter how minimally, after it has been signed into law by the governor, this Court has already discussed that renumbering a newly enacted article is unlike cases where the legislature enacted conflicting versions of the actual, substantive text. *See Willey v. Toppings*, 556 S.E.2d 818, 819–812 (W. Va. 2001) (describing substantively different versions of the West Virginia Code). The Office of the Clerk redesignated S.B. 334 as W. Va. Code § 16-64-1 *et seq*. As this Court has already found, this redesignation does not impermissibly violate Plaintiffs' due process rights. *See* ECF No. 31, at 7.

Lastly, Plaintiffs allege that § 16-64-10(d) is impermissibly vague. Section 16-64-10(d) states:

> Upon passage, any existing provider not offering the full array of harm reduction services as set forth in this section shall cease and desist offering all needle exchange services. Any provider offering the full array of harm reduction services shall have until January 1, 2022, to come into compliance with this section. Any new provider shall have until January 1, 2022, to come into compliance with the provisions of this section.

W. VA. CODE § 16-64-10(d). Plaintiffs argue that this section is unclear as to when syringe service programs that do not provide the full array of services are subject to penalty. *Am. Compl.*, ECF No. 21, ¶ 80. They also assert that the section is vague as to what "services" are required of programs to avoid penalties. *Id.* ¶ 84. Further, Plaintiffs assert that the newly promulgated emergency rule, which points to § 16-64-3(a) for the definition of harm reduction services applicable to § 16-64-10(d), is in contravention to the plain language of the statute and would require the Court to interpret the plain language of the statute to mean something other than its ordinary meaning.

The Court has considered this issue at the preliminary injunction stage. While the section reflects poor draftsmanship, the Court cannot conclude that the inconsistencies render the language so vague as to violate Plaintiffs' due process rights. With respect to the effective date of the requirements of § 16-64-10(d), the Court found that, because the Legislature did not expressly seek retroactive enforcement, the language cannot require compliance before its own effective date. ECF No. 31, at 8; *see W. Va. Consol. Pub. Ret. Bd. v. Clark*, 859 S.E.2d 453, 466 (W. Va. 2021) ("A statute that diminishes substantive rights or augments substantive liabilities should not be applied retroactively to events completed before the effective date of the statute (or the date of enactment if no separate effective date is stated) unless the statute provides explicitly for retroactive applications."). Defendants conceded this point. This eliminates any confusion:

Plaintiffs must cease and desist from offering needle exchange services unless they offer the "full array of harm reduction services" on the effective date of the Bill.

The Court also discussed the vagueness of the scope of "harm reduction services" and noted that the Court must read § 16-64-10(d) within the context of the entire statute. Harm reduction program is defined in § 16-64-1 and a list of required services for such programs is given in § 16-64-3(a). This renders the statute sufficiently clear regarding the services required for compliance.

Thus, the Court finds that the statute is not so vague as to violate Plaintiffs' due process rights. Plaintiffs have failed to state a claim upon which relief could be granted, so Defendants' Motion to Dismiss is **GRANTED** with respect to Count I.

2. <u>Count II – Procedural Due Process related to the conflict between § 10(b) and § 10(d)</u>

In Count II, Plaintiffs allege that the language of § 16-64-10(d) is irreconcilable with § 16-64(10)(b). *Am. Compl.*, ECF No. 21, ¶¶ 88–95. Section 16-64-10(d) requires providers not offering the full array of services to cease and decease offering all needle exchange services when the statute takes effect. W. VA. CODE § 16-64-10(d). Section 16-64-10(b) requires syringe services programs to provide participants with notice prior to closure and a transition care plan. *Id.* § 16-6410(b). In the face of the potential incompatibility between the sections, OHFLAC issued an emergency rule allowing a syringe service program to stay open in order to provide patients with a referral to another service. W. VA. CODE R. § 69-17-3.2.1.b. Additionally, Jolynn Marra, the Director of OHFLAC, testified that providers "would not be fined or punished for trying to follow the law as well as not abandoning their patients." *Hr'g Tr.*, ECF No. 27, at 67. Plaintiffs, however, assert that the emergency rule promulgated by OHFLAC does not resolve the conflict between sections 10(b) and 10(d).

The Court is obligated to avoid statutory interpretations that lead to absurd or unconstitutional results if "alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). Defendants here have adequately provided such an alternative interpretation. As noted at the preliminary injunction stage, this Court found that OHFLAC's emergency rule and Marra's testimony "present a viable interpretation which affords providers flexibility in meeting the notice and transition of care plan requirements." ECF No. 31, at 11.

Thus, Plaintiffs have failed to state a claim upon which relief could be granted, so Defendants' Motion to Dismiss is **GRANTED** with respect to Count II.

3. Count III – violation of equal protection due to discrimination between "new" and "existing providers

In Count III, Plaintiffs allege that § 16-64-10(d) discriminates against existing providers because the section requires them to offer the full array of harm reduction services as of the effective date of the statute, but allows new providers until January 1, 2022, to do the same. *See* W. VA. CODE § 16-64-10(d).

Under the Equal Protection Clause of the Fourteenth Amendment, "all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). When fundamental rights or suspect classification is not at issue, government classifications are generally permissible "so long as they are 'rationally related to a legitimate state interest.'" *Siena Corp. v. Mayor & City Council of Rockville*, 873 F.3d 456, 465 (4th Cir. 2017) (quoting *City of Cleburne*, 473 U.S. at 440); *see Colon Health Ctrs. of America, LLC v. Hazel*, 733 F.3d 535, 547–48 ("Non-suspect classifications—such as the one at issue here—are accorded a strong presumption of validity… and must be upheld if there is any reasonably conceivable state

of facts that could provide a rational basis for the distinction." (internal quotations omitted)). The test looks to whether "the governmental end is legitimate and whether the means chosen to further that end are rationally related to it." *Id.* (citing *Front Royal & Warren Cnty. Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 290 (4th Cir. 1998)). Under the rational basis standard, plaintiffs bear the burden "'to negate every conceivable basis which might support' the legislation." *Giarratano v. Johnson*, 521 F.3d 298, 303 (4th Cir. 2008) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).

As the Court reads the plain text of the law, this law requires existing providers to cease and desist operations if they do not offer the full array of harm reduction services, yet, new providers are given a grace period of until January 1, 2022, to comply. This clearly discriminates between new and existing providers.

The Court must next consider whether there is a rational basis to justify this discrimination. As Defendants do not even attempt to argue that such discrimination is justified, the Court cannot find that there is.

Plaintiffs argue that the appropriate remedy for the discrimination against existing providers would be to grant existing providers the same compliance requirements granted to new providers—allowing until January 1, 2022, for compliance. However, at the preliminary injunction hearing, Director Marra testified that OHFLAC would not allow new providers to operate before they get a license—in order to obtain a license, a program must provide the "full array of harm reduction services" as set forth in W. Va. Code § 16-64-3(a). *See Hr'g Tr.*, ECF No. 27, at 63. Effectively, the administration stated that it would not discriminately apply the section, as new providers would not be allowed to operate before offering the full array of harm reduction services. Further, as the January 1, 2022, compliance date has come and gone, the relief sought by Plaintiffs

is mooted.

Thus, Defendants' Motion with respect to Count III is **GRANTED**. ECF No. 32.

4. Counts IV, V, and VI for West Virginia state law claims

Plaintiffs claim that Defendants have violated the "one-object" rule of the West Virginia Constitution (Counts IV and V) and that Defendants have violated the separation of powers doctrine in the West Virginia Constitution (Count VI). *Am. Compl.*, ECF No. 21, ¶¶ 100–122. Defendants simply assert that Plaintiffs allege ongoing violations of state law, which cannot be brought under the *Ex parte Young* exception to the Eleventh Amendment.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. This Amendment has been interpreted to bar citizens from bringing suit against their own states. *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 291 (4th Cir. 2001) (citing *Litman v. George Mason Univ.*, 186 F.3d 544, 549 (4th Cir. 1999)). Further, when, as is the case here, suit is brought only against a state official, the suit is barred "when the State is the real, substantial party in interest." *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (internal quotations omitted)). Although not applicable to this matter, this immunity can be waived. *Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 101 (4th Cir. 2019).

Eleventh Amendment immunity is additionally subject to exception. *Bragg*, 248 F.3d at 291; *see S.C. State Ports Auth. v. Fed. Maritime Comm'n*, 243 F.3d 165 (4th Cir. 2001). The relevant exception at issue here is the *Ex parte Young* doctrine, which provides that an individual may sue a state official for "injunctive or declaratory relief to remedy an ongoing violation of law." *S.C. State Ports Auth.*, 243 F.3d at 170; *Ex parte Young*, 209 U.S. 123 (1908). To determine

whether the *Ex parte Young* doctrine applies to a specific case, the court must simply "conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Va. Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). When considering whether the *Ex parte Young* doctrine applies to a specific case, there is a threshold question of whether the Plaintiff seeks to recover against a state for misconduct that is governed by federal law or by state law. *See Huffman*, 651 F. Supp. 2d at 528.

Here, Plaintiffs are asserting that the enactment of S.B. 334 violated the West Virginia Constitution (the one-object requirement and the separation of powers requirement). These are allegations of violations of *state* law. Under *Ex parte Young* jurisprudence, such claims are not cognizable in federal court against a state official. *See Pennhurst*, 465 U.S. at 106 (finding that *Ex parte Young* is "inapplicable in a suit against state officials on the basis of state law").

Thus, Plaintiffs do not raise a claim upon which relief could be granted by this Court with respect to Counts IV, V, and VI, and Defendants' Motion to Dismiss regarding these Counts is **GRANTED**. ECF No. 32.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion. ECF No. 32.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER: March 31, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE